6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 0 5 2001

Michael N. Milby
Clerk of Court

RAYMONDVILLE INDEPENDENT SCHOOL §
DISTRICT, AND VICTOR RUBALCABA, §
OSCAR GUTIERREZ, JOHN KELLOGG, RAY §
SOLIS, HARRY CAVAZOS, INDIVIDUALLY §
AND IN THEIR OFFICIAL CAPACITY AS §
MEMBERS OF THE BOARD OF TRUSTEES, §
    *Plaintiffs*, §
     §
v. §
     §
JIM NELSON, IN HIS OFFICIAL CAPACITY AS §
COMMISSIONER OF EDUCATION AND THE §
TEXAS EDUCATION AGENCY, §
    *Defendants*. §

CIVIL ACTION NO. B-01-0190

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

TO THE HONORABLE JUDGE OF THIS COURT:

    Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants JIM NELSON, IN HIS

OFFICIAL CAPACITY AS COMMISSIONER OF EDUCATION AND THE TEXAS EDUCATION AGENCY, by and

through their attorneys of record, the Attorney General of Texas and the undersigned assistant

attorney general, file their Motion to Dismiss for Failure to State a Claim. Defendants would

respectfully show this Court the following:

### Introduction

1.    Plaintiffs are the Raymondville Independent School District ("Raymondville ISD") and five

(5) members of the board of trustees of the district. Raymondville ISD is a political subdivision,

created by the Texas Legislature, and is therefore an agency of the State of Texas. *See, e.g., Barr*

*v. Bernhard*, 562 S.W.2d 844, 846 (Tex. 1978). Defendants are the Texas Education Agency, which

is also an agency of the State of Texas, and Jim Nelson, who is the Commissioner of Education for the State of Texas and who has been sued only in his official capacity.

2.      Plaintiffs claim that Commissioner Nelson's decision to assign a monitor to Raymondville ISD violated the Voting Rights Act of 1965 (28 U. S. C. § 1973 et seq), the due process clause of the federal constitution (Fourteenth Amendment), and the due course of law clause [1] of the state constitution (article I, section 19).  Under these due process clauses, they seek to challenge the constitutionality of several statutory provisions in the Texas Education Code. (Petition, ¶ V, first sentence).

3.      Plaintiffs' allegations purporting to assert violations of federal and state due process fail to state a claim upon which relief can be granted.  Defendants therefore request that Plaintiffs' attempted due process claims be dismissed under Rule 12(b)(6).

4.      Plaintiffs' purported claim under the Voting Rights Act likewise should be dismissed for failure to state a claim because it does not present a change with respect to voting that would come within the ambit of the Act.

**Argument and Authorities**

**I.      Plaintiff Raymondville ISD Does Not Have the Right to Assert a Due Process Claim.**

5.      It has long been settled law that a political subdivision of a state has no due process rights under the Fourteenth Amendment against the state that created it.  Because such a subdivision is created by the state and exists at the sovereign will of its creator, "the State may withhold, grant or withdraw powers and privileges as it sees fit." *City of Trenton v. New Jersey*, 262 U.S. 182, 187, 43 S.Ct. 534, 537 (1923).  For this reason, the Supreme Court consistently has held that such

---

[1]Plaintiffs refer to this clause as "due process" instead of "due course of law."  (Petition, ¶ V).  To avoid confusion, Defendants will also refer to it as "due process."

subdivisions cannot invoke the protection of the Fourteenth Amendment to restrain acts of the state. *See, e.g, id.* at 188, 43 S.Ct. at 537 (so holding against claim of municipal corporation).

6.      Applying this rule, the Fifth Circuit has barred Fourteenth Amendment claims by municipalities and other state subdivisions. *See, e.g., Town of Ball v. Rapides Parish Police Jury*, 746 F.2d 1049, 1051 n.1 (5th Cir. 1984).

7.      Texas courts apply the same rule to bar attempts by state agencies to assert due process claims under the Texas Constitution. Only "citizens" (i.e., persons) can bring a claim under article I (including the due process clause) of the Texas Constitution. *Colony Mun. Util. Dist. No. 1 v. Appraisal Dist.*, 626 S.W.2d 930, 932 (Tex. App. -- Dallas 1982, writ ref'd n.r.e.). For this reason, a state agency, including a political subdivision such as a school district, is not entitled to claim that a state statute denies the agency due process or equal protection under that constitution. *See, e.g., McGregor v. Clawson*, 506 S.W.2d 922, 929 (Tex. Civ. App. – Waco 1974, no writ).

8.      As noted above, Raymondville ISD is a school district, created by the Texas Legislature, and is therefore a political subdivision of the State of Texas. As such, it is a state agency, not a "person" or "citizen" under the state and federal constitutions, and, accordingly, the district does not have the right to claim that a state statue denies it due process under either constitution. *See, e.g., City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1254-55 (5th Cir. 1976); *Parker County v. Weatherford Indep. School Dist.*, 775 S.W.2d 881, 887 (Tex. App. – Fort Worth 1989), *rev'd on other grounds*, 794 S.W.2d 33 (Tex. 1990); *Collier v. Poe*, 732 S.W.2d 332, 343-44 (Tex. Cr. App. 1987) (due process is personal right of citizens, not governments or their agencies).

9.      Plaintiff Raymondville ISD in this case seeks to challenge the constitutionality of the provisions of the Texas Education Code that, among other things, authorize Commissioner Nelson

to assign a monitor for a school district under certain circumstances. The asserted basis for Raymondville ISD's challenge is that the statutes are allegedly so vague that they violate Raymondville ISD's due process rights. (Petition, ¶ 5). In addition, Raymondville ISD generally claims that the investigation by the Texas Education Agency that resulted in the appointment of a monitor somehow violated the district's due process rights. For the reasons and under the authorities cited, Raymondville ISD has no right under either the state or federal due process clause to make these claims.

9.      Accordingly, the due process allegations of Plaintiff Raymondville ISD should be dismissed for failure to state a claim.

## II.    The Individual Plaintiffs Do Not Have Standing to Assert Due Process Allegations.

10.     Although the individual Plaintiffs are "persons" and "citizens" under the federal and state constitutions, and are entitled to assert their own personal due process rights, they have no standing to make the particular claims described in the Petition.

11.     Under Article III of the United States Constitution, plaintiffs do not have standing to bring a particular claim unless they can show (1) "'a distinct and palpable injury'" (also known as "injury in fact"), that (2) has a "'fairly traceable' causal connection between the claimed injury and the challenged conduct." *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U. S. 59, 72, 98 S.Ct. 2620, 2630 (1978) (quoting and citing previous Supreme Court opinions). Plaintiffs cannot rest their claim to relief on the legal rights or interests of third parties, but must show that they themselves personally suffer actual or threatened injury. *Warth v. Seldin*, 422 U. S. 490, 501, 95 S.Ct. 2197, 2206 (1975).

12.     The conduct that Plaintiffs challenge here is the Texas Education Agency's investigation of complaints against Raymondville ISD and the subsequent assignment by Commissioner Nelson of a monitor to the Raymondville ISD. This conduct has neither caused nor threatened to cause injury or harm to Plaintiffs individually. As the Petition concedes, the sanctions imposed by Commissioner Nelson, including the assignment of a monitor, were assessed against Raymondville ISD and the board of Raymondville ISD, not any individual member of the board. (Petition, ¶ IV).

13.     The school board is a corporate body and acts only as a single official entity for the district. TEX. EDUC. CODE § 11.151(a). As an official corporate entity, the board is obviously affected by the sanctions. By contrast, individual board members who participate as members of the corporate body are not affected personally and, accordingly, their individual due process rights are simply not at issue.

14.     Moreover, by law, the cost of the monitor must be paid by Raymondville ISD, not by any individual board members. (Petition, ¶ IV; *see* TEX. EDUC. CODE § 39.131(d)).

15.     Accordingly, none of the individual Plaintiff has standing to complain about the investigation of the school district and the assignment of a monitor to it. The Petition establishes the lack of standing of the individual Plaintiffs to bring any due process claims. For this reason, those purported claims should be dismissed.

**III.     Assignment of a Monitor Does Not Trigger the Application of the Voting Rights Act.**

   **A.     *The Act covers voting changes; it does not apply to any act that is not a voting change.***

16.     The Supreme Court has held that the Voting Rights Act of 1965 covers only changes in voting or elections. In describing the scope of the Act, the Court in *Presley v. Etowah County*

*Comm'n* emphasized that it extends only to changes in election procedures and changes in which offices are elective. 502 U. S. 491, 502-03, 112 S.Ct. 820, 828 (1992).

17.    Covered changes must have "a direct relation to voting and the election process." *Id.* at 503, 112 S.Ct. at 829. For this reason, the Act covers changes in the manner of voting, changes in voter and/or candidate qualifications, changes in the composition of the electorate, and the creation or abolition of elective office. *Id.* at 502-03; 112 S.Ct. at 828.

18.    On the other hand, the Act does not cover changes in the operating procedures of a governing body, changes in decisionmaking authority, or the transfer, diminution, distribution, or reallocation of the powers of government officials. *Id.* at 504-07, 112 S.Ct. at 829-30.

**B.    *Assignment of a monitor is not a voting change.***

19.    As a covered jurisdiction under § 5 of the Voting Rights Act, Texas must obtain "preclearance" before it can implement voting changes. The Act gives the Department of Justice the authority to grant preclearance to implement those state actions that the Department determines not to be voting changes subject to the Act. 42 U.S.C. § 1973c.

20.    Pursuant to § 5, Texas submitted Chapter 39 of the Texas Education Code, including the sanctions provisions of § 39.131, to the Department of Justice for preclearance. *Texas v. United States*, 532 U. S. 296, 298-99, 118 S.Ct. 1257, 1259 (1998). In essence, Texas sought a determination that none of the provisions of Chapter 39 constituted a voting change.

21.    The Department of Justice "concluded that the first six sanctions [under § 39.131] do not affect voting and therefore do not require preclearance." *Id.* at 299, 118 S.Ct. at 1259. The provision for the appointment of a monitor is the sixth sanction under § 39.131. Thus, the Department of

<u>Justice specifically found that the appointment of a monitor is not a voting change subject to the</u>

<u>Voting Rights Act and precleared its implementation.</u>

22.     Moreover, a simple application of the *Presley* standards confirms that the decision of the

Department of Justice was correct and the assignment of a monitor to Raymondville ISD under the

Texas Education Code cannot possibly be a voting change. *See* TEX. EDUC. CODE § 39.131(a)(6).

By statute, a monitor may "participate in and report to the [Texas Education] agency on the activities

of the board of trustees or the superintendent." *Id*. Significantly, however, a monitor has no power

to oversee, direct, or control the operations of a school district.

23.     The limited authority of a <u>monitor</u> should be contrasted with the greater authority that a

<u>master</u> may exercise over a school board. A master may be given the authority to override or direct

an action of the school board. *See* TEX. EDUC. CODE § 39.131(e)(1)-(6).

24.     For this reason, the Department of Justice has argued that the appointment of a master

possibly could, under some circumstances, trigger the application of the Voting Rights Act if the

master were to exercise his authority so as to become a *de facto* replacement of the elected school

board. *See Texas v. United States*, 532 U. S. at 299, 118 S.Ct. at 1259(1998).[2]

25.     However, this argument is not available to Plaintiffs here because unlike a master, a monitor

is not permitted by law to direct or override actions of a school board. As the Department of Justice

has acknowledged, a monitor cannot take an action in the place of the elected school board and, for

this reason, the assignment of a monitor to Raymondville ISD does not even raise the question of

*de facto* replacement of the school board,

_____

[2]As indicated in *Texas v. United States*, Defendants do not agree with this argument because by statute, even
a master cannot completely replace the authority of the school board. *See* TEX. EDUC. CODE § 39.131(e)(3)-(6)
(prohibiting the master from taking certain important actions relating to elections and the school district). This court
need not address this argument, however, because a master has not been assigned to Raymondville ISD.

26.     In sum, the assignment of a monitor to a school district does not change any voting procedure. It does not prevent any voter from voting. It does not change the manner of voting. It does not change any voter or candidate qualifications. It does not change the composition of the electorate. It does not create or abolish any elective office. And it does not replace or threaten to replace the elected school board because a monitor does not have the authority to supplant the power of the elected board members.

27.     Accordingly, there is simply no possibility that the assignment of a monitor does or could create a voting change within the meaning of the Voting Rights Act. Plaintiffs' allegations therefore do not present a claim under the Voting Rights Act and should be dismissed.

Respectfully submitted,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

JEFFREY S. BOYD
Deputy Attorney General for Litigation

TONI HUNTER, Chief
General Litigation Division

*Jeff A. Armstrong, with permission*
JEFF A. ARMSTRONG                  *Ramier Canales*
Texas Bar No. 01321050             *Southern District NO.*
Assistant Attorney General
General Litigation Division            *29533*
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX
ATTORNEYS FOR DEFENDANTS

# CERTIFICATE OF SERVICE

I, Jeff A. Armstrong, do hereby certify that a true and correct copy of the above and foregoing

document was on this December 4, 2001 sent via certified mail, return receipt requested, and/or

regular U. S. mail to:

Gustavo L. Acevedo, Jr.
Attorney at Law
1906 Tesoro Boulevard
Pharr, TX 78577

JEFF A. ARMSTRONG
Assistant Attorney General

*Jeff A. Armstrong with permission*
*Ramiro Canales*
*Southern District No:*
*29533*